735 S.E.2d 488

**In the Matter of Chad Brian HATLEY, Respondent.**

**Appellate Case No. 2012–212668.**

**No. 27200.**

Supreme Court of South Carolina.

Heard Oct. 16, 2012.
Decided Dec. 12, 2012.

Lesley M. Coggiola, Disciplinary Counsel, and William Curtis Campbell, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Henrietta U. Golding, McNair Law Firm, of Myrtle Beach, for Respondent.

PER CURIAM.

In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) and respondent have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). In the Agreement, respondent admits misconduct and consents to the imposition of any suspension greater than one (1) year or disbarment. He requests that any suspension or disbarment be imposed retroactive to September 28, 2011, the date of his interim suspension. *In the Matter of Hatley*, 396 S.C. 216, 721 S.E.2d 767 (2011). In addition, he agrees to pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct (the Commission) within thirty (30) days of the imposition of a sanction and to reimburse the Lawyers Fund for Client Protection (Lawyers Fund) for any and all funds paid on his behalf prior to seeking reinstatement. Finally, respondent agrees to complete the Legal Ethics and Practice Program Ethics School and Trust Account School prior to seeking reinstatement. We accept the Agreement and suspend respondent from the practice of law in this state for two (2) years, retroactive to the date of his interim suspension. Respondent shall not file a Petition for Reinstatement until he has completed the Legal Ethics and Practice Program Ethics School and Trust Account School and fully reimbursed all clients and entities, including the Lawyers Fund, harmed as a result of his misconduct. Within thirty (30) days of the date of this opinion, respondent shall pay the costs incurred in the investigation and prosecution of this

matter by ODC and the Commission. The facts, as set forth in the Agreement, are as follows.

## Facts

### Matter I

Respondent admits he incurred three insufficient fund reports on his trust account due, in part, to his failure to maintain and reconcile his trust accounts. Respondent further admits that he failed to ensure that the deposits were properly credited to his trust account prior to disbursements. This error occurred when respondent's primary paralegal was on maternity leave and a temporary paralegal did not timely make the deposits even though the deposit slip had been prepared and packaged for delivery to the bank.

### Matter II

As a result of his own internal investigation, respondent discovered that a former paralegal had committed fraud and misappropriation through numerous and creative false entries on closing statements. Although the paralegal did not follow a specific pattern, in one scenario the paralegal listed her landlord and a creditor as service providers on closing statements, causing checks to be written to these two parties on the paralegal's behalf. At other times, the paralegal misappropriated the funds due to the law firm and, instead, allocated those funds to her own creditors. In total, the paralegal misappropriated approximately $21,665.29 from twenty (20) different closings by causing twenty-eight (28) checks in relatively small sums to be issued on her behalf.

Prior to the discovery of her fraud and misappropriation, respondent terminated the paralegal for attempting to proceed with a real estate closing without respondent being present. After discovering the misappropriation by the paralegal, respondent immediately contacted the paralegal's new employer to alert the employer to his discovery. After a review, the new employer determined the paralegal had also committed fraud at its business. By quickly contacting the new employer, respondent limited the paralegal's misappropriation at the new employer although she had already misappropriated a

much larger sum from her new employer than she had at respondent's practice.[1]

Respondent acknowledges that it is his responsibility to supervise the activities of his staff and the failure to timely detect the paralegal's criminal activities was due, in part, to his failure to follow Rule 417, SCACR. Respondent has now conducted a complete audit of his closing files and has repaid the amount misappropriated, $21,665.29, with his personal funds.

### Matter III

While conducting an audit of real estate files in conjunction with the prior matter, respondent discovered that another former paralegal had committed fraud and misappropriation in one closing. When the check for taxes was returned because the seller had paid the taxes prior to the sale, the paralegal voided the check and wrote a new reduced check in the amount of $473.02 for taxes. When respondent contacted the county office to question this reduced amount, it was discovered that the check was for property taxes on property personally owned by the paralegal.

Prior to the discovery of this misappropriation, respondent had terminated the paralegal due to poor work habits. After discovery of the misappropriation, respondent contacted the paralegal and she promised to repay the stolen funds. The paralegal repaid $100.00 of the misappropriated funds. Respondent repaid the remaining $373.02 from his personal funds.

Upon discovery, respondent self-reported this matter to ODC. Respondent has now conducted a complete audit of his closing files and determined this is the only instance of fraud by this paralegal.[2]

---

1. Respondent conducted a background check prior to hiring this paralegal. Even though the paralegal was on probation at the time, the probation did not appear in the background check.

   After discovering the misappropriation, respondent initiated criminal charges against this paralegal. Charges were filed against her and she was incarcerated as a result of misappropriation from respondent's law firm and from her new employer.

2. Respondent did not initiate criminal charges against this paralegal because she promised to repay the funds, cares for four children, and no longer works in the legal profession.

## Matter IV

Respondent acknowledges that he failed to ensure procedures were in place that would thwart staff misappropriation and misconduct. Respondent states that, prior to these disciplinary proceedings, he lacked a complete understanding of Rule 1.15, RPC, and Rule 417, SCACR. He represents to ODC that he now has the requisite understanding of the Court's Rules and will institute procedures that are compliant with the rules.

As previously stated, respondent has now conducted a complete audit of his closing files and has repaid the amounts misappropriated by the paralegals with his personal funds. Respondent acknowledges that reliance on the representations of his employees and accountants does not relieve him of the responsibility of meeting the standards for financial record-keeping and the safeguarding of property as set forth in the Court's Rules.

## Matter V

Initially, the complainant in this matter alleged respondent had committed misconduct which is not subject to the Rules of Professional Conduct. Subsequently, the complainant alleged respondent failed to pay the withholding taxes for the complainant's wife during her employment with respondent. Respondent admits he failed to pay the complainant's wife's withholding taxes.

## Matter VI

Respondent represented the complainant in a real estate closing. Respondent entered into a business relationship with the complainant without obtaining the requisite written waivers and disclosures required by Rule 1.8, RPC, in that he did not acquire a writing apart from the Agreement establishing he would not represent the complainant in the transaction and that the complainant should consult separate counsel. The Agreement between respondent and the complainant specifically acknowledges that both parties had time to deliberate and consult with their respective attorneys.

Respondent acknowledges that a Rule 1.8 waiver and disclosure were not obtained but states that the complainant is a

seasoned real estate developer who has retained a number of lawyers in the Myrtle Beach area on a regular basis and has a son-in-law who is an attorney licensed in South Carolina.

### Matter VII

Respondent admits he received an insufficient fund notice on his First Citizens IOLTA account which he had closed. Respondent states that the account was dormant and the funds in that account had been transferred to a new IOLTA account.

Respondent admits that the 2005 check drawn on the closed account was located in a file. Instead of issuing a check on the new account, the 2005 check payable on the closed account was forwarded to the title insurance company. Respondent admits that the delay in transmitting the funds to the title insurance company was solely his responsibility.

### Matter VIII

Respondent admits he incurred tax liens from his failure to pay withholding taxes and failure to file and pay income taxes.

### Matter IX

Respondent admits he failed to pay the court reporter in a timely manner for her services rendered and invoiced on April 30, 2008. On April 30, 2009, the probate court issued a Summons to Show Cause to respondent to explain why he had not paid the court reporter. Upon receipt of the Summons to Show Cause, respondent immediately paid the court reporter.

Respondent also admits that he had previously been summoned by the Probate Court of Horry County for his failure to produce documents requested by the court. At that hearing, respondent blamed the problem on his staff.

At the hearing regarding the unpaid court reporter bill, respondent advised the court that the bill had been placed in the file by a staff member; however, he advised the court he understood it was ultimately his responsibility and he apologized to the court. At the hearing, the probate court sanctioned respondent in the amount of $500.00 for his failure to timely pay the court reporter.

Respondent admits it was his responsibility for the delicts before the probate court and he accepts that he is responsible for any issues that arise in the practice of law.

### Matter X

Respondent was arrested and charged with two counts of Willful Attempt to Evade or Defeat a Tax, two counts of Failure to Pay a Tax, File a Return or Maintain Records, and six counts of Failure to Pay Over or Account for Withholding Taxes. Respondent was attempting to remedy the failure to pay these taxes when he discovered the State Department of Revenue had commenced a criminal investigation. Respondent had paid all known outstanding withholding taxes prior to any criminal charges being filed.

Respondent pled guilty to one count of Failure to Pay a Tax, File a Return or Maintain Records and two counts of Failure to Pay Over or Account for Withholding Taxes. Respondent paid a fine of $5,000.00 and restitution in the amount of $26,867.00 for state income taxes.

### Matter XI

On March 15, 2011, respondent was retained by a client to pursue a reduction in alimony. Respondent admits he did nothing in furtherance of the client's case for five months. Respondent further admits he and the client discussed sending a letter regarding the ending of alimony payments, but he did not tell the client that the letter had been sent. In addition, respondent admits he inadvertently filed the pleadings in Georgetown County rather than Horry County and that he did not include a request to terminate alimony as desired by the client.

Respondent acknowledges there was a clerical billing error on the invoice; however, the client was never overcharged.

### Matter XII

Respondent admits he failed to recognize that he was obligated to pay $100.00 in court costs by February 17, 2012, when he signed his consent to a Civil Contempt Order of the family court dated January 17, 2012. As a result of respondent's failure to pay the court costs, a bench warrant was issued for respondent's arrest. Prior to being arrested, this

matter was brought to respondent's attention and he immediately took steps to rectify his mistake. The court then lifted the bench warrant.

## Law

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation); Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client); Rule 1.4 (lawyer shall reasonably consult with client about the means by which client's objectives are to be accomplished and keep client reasonably informed about the status of the matter); Rule 1.8 (lawyer shall not enter into business relationship with client unless client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek advice of independent legal counsel on the transaction and client gives informed consent, in a writing signed by client, to the essential terms of the transaction and lawyer's role in the transaction, including whether lawyer is representing client in the transaction); Rule 1.15 (lawyer shall safe keep client property); Rule 5.3 (lawyer possessing managerial authority in a law firm shall make reasonable efforts to ensure that firm has in effect measures giving reasonable assurance that non-lawyer employee's conduct is compatible with the professional obligations of lawyer); Rule 8.4(b) (it is professional misconduct for lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct that is prejudicial to the administration of justice). In addition, respondent admits he violated provisions of Rule 417, SCACR.

Respondent also admits he has violated the following Rule for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (it is grounds for discipline for lawyer to violate Rules of Professional Conduct).

## Conclusion

We accept the Agreement for Discipline by Consent and suspend respondent from the practice of law in this state for two (2) years, retroactive to the date of his interim suspension.

Respondent shall not file a Petition for Reinstatement until he has completed the Legal Ethics and Practice Program Ethics School and Trust Account School and fully reimbursed all clients and entities, including the Lawyers Fund, harmed as a result of his misconduct. Within thirty (30) days of the date of this opinion, respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.